UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
  MARK SOLDO,                              :

                       Plaintiff,       :

                             :             **OPINION AND ORDER**

  v.                             :

                             :             14 CV 3881 (VB)

THE VILLAGE OF MONTICELLO,    :
MONTICELLO POLICE DEPARTMENT,  :
POLICE OFFICER, SCOTT J. GALLIGAN,  :
POLICE OFFICERS "JOHN DOE" 1 AND 2,  :
EMPIRE RESORTS, INC. d/b/a         :
MONTICELLO CASINO & RACEWAY, and  :
MONTICELLO RACEWAY           :
MANAGEMENT, INC.,             :
                    Defendants.   :
-------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Mark Soldo brings this action against defendants the Village of Monticello, the

Monticello Police Department, Police Officer Scott J. Galligan, and Police Officers "John Doe"

1 and 2 (collectively the "Village defendants"), alleging violations of 42 U.S.C. § 1983 for false

arrest and malicious prosecution.  In addition, plaintiff brings state law claims of false arrest,

false imprisonment, malicious prosecution, and vicarious liability against defendants Empire

Resorts, Inc. d/b/a Monticello Casino & Raceway, and Monticello Raceway Management, Inc.

(collectively the "Casino defendants").[1]

       Before the Court are defendants' motions for summary judgment.  (Docs. ##61, 65).

---

[1]     Plaintiff has withdrawn the remaining causes of action asserted in the amended
complaint.  (Pl.'s Br. at 1, 25).  Also, although not explicitly stated in plaintiff's opposition
papers, it is understood Police Officers "John Doe" 1 and 2 are no longer defendants, because the
allegations against them related to the claims for abuse of process, which was voluntarily
dismissed by plaintiff.  Moreover, plaintiff makes no mention of these defendants in his
opposition to the instant motions for summary judgment.

For the following reasons, the Village defendants' motion is GRANTED, and the Court declines to exercise jurisdiction over the remaining state law claims, rendering the Casino defendants' motion moot.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1367.

## BACKGROUND

The parties have submitted briefs, statements of fact ("SOF"), and declarations ("Dec'l") with supporting exhibits, which reflect the following factual background.

On May 4, 2013, plaintiff and two co-workers visited the Monticello Casino & Raceway (the "Casino"). Plaintiff alleges he and one of his co-workers, Michael Careri, were seated next to each other at two video gaming machines ("VGMs") when plaintiff witnessed Careri strike the glass screen of the VGM he was playing, breaking the screen. Neither plaintiff nor Careri reported the broken VGM to any Casino employees before leaving the casino.

At approximately 12:40 p.m. that day, a Casino floor attendant notified the Casino security department that the VGM's screen was broken. A Casino employee then called the Monticello Police Department about the broken VGM. Monticello Police Officer Harry Mota, who is not a defendant here, responded. Officer Mota conducted an investigation and drafted a report.

Officer Mota's report, dated May 4, 2013, states the damage to the VGM occurred "at around 12:36 p.m." (Bellistri Dec'l Ex. Q). The Casino's incident report, also dated May 4, 2013, states that the VGM was damaged at 12:24 p.m., and that the person who struck the VGM "left the property through the main entrance at 12:36 p.m." (Bellistri Dec'l Ex. O).

The Casino surveillance department reviewed and retained a clip of the Casino's surveillance video showing the relevant VGM on May 4, 2013, from 12:23 p.m. to 12:29 p.m.[2] The video clip shows plaintiff playing the VGM that was eventually broken for the entire six minute period that was retained.  Plaintiff maintains if the video showed the next few minutes – until when Officer Mota's report said it was broken, at approximately 12:36 p.m. – it would show plaintiff got up from the VGM in question and Careri sat down at the same VGM, subsequently breaking it.

Three weeks later, on May 25, 2013, plaintiff returned to the Casino to gamble.  While there, Casino security approached plaintiff and asked him to go to the security office to discuss the May 4, 2013, incident.  A security department employee then called the Monticello Police Department, and Officer Scott J. Galligan was dispatched.

When Officer Galligan arrived at the Casino, he was given certain documents, including a Casino security photograph of plaintiff leaving the Casino on May 4, 2013, and a photograph of the damaged VGM.  When he met with plaintiff, Officer Galligan told him he had "seen everything," including "all of the surveillance" and had "talked to everybody" at the Casino. (Pl.'s SOF at ¶ 50).[3]  Plaintiff adamantly maintained his innocence to Officer Galligan and told him Careri had broken the VGM.  During the exchange, Officer Galligan told plaintiff, "the Surveillance team . . . does not have [Careri] ever sitting at this particular machine . . . I saw with my own two eyes you smash the machine."  (Id. ¶ 52).  Plaintiff pleaded with Officer Galligan to

---

[2]     The surveillance video clip was submitted to the Court in connection with the instant motions.  It shows the same six minute period, without audio, from three different angles, all of which have been reviewed by the Court.  (Bellistri Dec'l Ex. K).

[3]     The conversations between plaintiff, several security employees, and Officer Galligan in the security office were also captured on video, and submitted in connection with the instant motions.  (Bellistri Dec'l Ex. N).  The Court has also carefully reviewed this video.

go back to the surveillance office to watch the video again.  Officer Galligan left the security room, and when he returned a few minutes later, he put plaintiff under arrest and escorted him out of the Casino.  While he was being searched and handcuffed, plaintiff asked if Officer Galligan went back and looked at the video, to which Officer Galligan responded, "Sure did." (Id. ¶ 70).

Plaintiff was charged with criminal mischief in the third degree, under New York Penal Law Section 145.05, a class E felony.

Plaintiff spent approximately seven days in Sullivan County Jail and alleges he "was subjected to a body cavity search, was threatened by inmates who took his food, and was afraid he would be beaten and/or raped by other inmates."  (Pl.'s SOF ¶ 237).  Plaintiff further alleges because of the ensuing legal proceedings, he had to remain in Sullivan County for approximately five and a half months after he was released from jail.  (Id. ¶ 242).  Plaintiff maintained his innocence throughout the proceedings against him.  The charges were reduced on July 26 and October 25, 2013, and ultimately dismissed on November 15, 2013.  (Id. ¶ 245).

## DISCUSSION

I.   Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See id.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The "mere existence of a scintilla of evidence in support" of the non-moving party's position is likewise insufficient; "there must be evidence on which the jury could reasonably find" for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial.  Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

I.     False Arrest

The Village defendants argue plaintiff's claims for false arrest should be dismissed because Officer Galligan had probable cause, or at a minimum, arguable probable cause, to arrest plaintiff on May 25, 2013.

The Court agrees.

A Section 1983 claim for false arrest "is substantially the same as a claim for false arrest under New York law.  Under New York law, an action for false arrest requires that the plaintiff show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012), as amended (Dec. 4, 2012) (internal citations and quotations omitted).

A plaintiff cannot prevail on a false arrest claim if the arresting officer had probable cause to arrest.  Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).  Probable cause exists if officers have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted).

"Probable cause does not require absolute certainty."  Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003).  Indeed, "some exculpatory evidence does not make an arrest illegal

when the totality of evidence still establishes probable cause to believe that the suspect

committed the crime."  Stansbury v. Wertman, 721 F.3d 84, 94 (2d Cir. 2013).

To defeat a false arrest claim, an arresting officer need not have had probable cause to

arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the

offense with which the plaintiff was charged.  Devenpeck v. Alford, 543 U.S. 146, 153 (2004);

Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).  As long as there was probable cause to arrest

the plaintiff for some offense, a false arrest claim will fail.  Jaegly v. Couch, 439 F.3d at 152.

"Once a police officer has a reasonable basis for believing there is probable cause, he is

not required to explore and eliminate every theoretically plausible claim of innocence before

making an arrest."  Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).

"[I]t is well-established that a law enforcement official has probable cause to arrest if he

received his information from some person, normally the putative victim or eyewitness."

Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000); Stansbury v. Wertman, 721 F.3d 84, 90

(2d Cir. 2013) ("absent circumstances that raise doubts as to the victim's veracity, a victim's

identification is typically sufficient to provide probable cause") (internal quotation omitted).

Moreover, even if the arrest was not supported by probable cause, a police officer will

still prevail in a false arrest case under the doctrine of qualified immunity if there was "arguable

probable cause" to arrest.  Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).

"Arguable probable cause exists if either (a) it was objectively reasonable for the officer

to believe that probable cause existed, or (b) officers of reasonable competence could disagree on

whether the probable cause test was met."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015)

(internal quotation marks omitted).  The arguable probable cause standard is "more favorable to

the officers than the one for probable cause," Ackerson v. City of White Plains, 702 F.3d 15, 21

7

(2d Cir. 2012) (internal quotation marks omitted), as "[t]his forgiving standard protects all but the plainly incompetent or those who knowingly violate the law." Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001) (internal quotation marks omitted).

Applying these standards, the Court finds as a matter of law that Officer Galligan had probable cause, or at a minimum, arguable probable cause, to arrest plaintiff.

First, an employee of the Casino, which was the victim of the offense here, called the police and "presented [p]laintiff as the perpetrator." (Pl.'s Br. at 12).   In addition, Officer Galligan was given a surveillance photograph of the person the Casino believed damaged the VGM – plaintiff – leaving the casino on May 4, 2013, and a photograph of the broken VGM.

Second, Officer Galligan viewed the clipped surveillance video, which showed only plaintiff – no one else – playing the VGM in question during the full duration of the clip, on the day the VGM was broken, at most eleven minutes before it was reported broken.[4]

Finally, Officer Galligan questioned plaintiff.  Plaintiff maintained his innocence and told Officer Galligan his version of the story.  Among other things, plaintiff told Officer Galligan that Careri, not plaintiff, was seated at the VGM in question when he (Careri) broke the VGM. (Bellistri Dec'l Ex. N).  This is seemingly inconsistent with the video clip made available to Officer Galligan by the Casino, which shows only plaintiff playing the VGM in question.  Even if Officer Galligan was mistaken that what plaintiff told him was inconsistent with the video, that would not undermine the Court's finding he had probable cause.  Williams v. Town of Greenburgh, 535 F.3d 71, 79 (2d Cir. 2008) ("a mistake about relevant facts . . . does not

---

[4]      Plaintiff makes much of the fact that the surveillance office log-in sheet only shows Officer Galligan's name one time on May 25, 2013, which is inconsistent with Officer Galligan's statements that he had already reviewed the surveillance video when he first spoke to plaintiff, and then went back to re-review it after plaintiff asked him to.  Regardless, it is undisputed Officer Galligan viewed the video at least once on May 25, 2013.

undermine the existence of probable cause"); see also Kent v. Thomas, 464 F. App'x 23, 25 (2d Cir. 2012) (summary order) ("For false arrest claims, the probable cause inquiry focuses on the facts reasonably believed by the officers at the time of the arrest; even if it later turns out that the officers were mistaken, a mistake of fact would not undermine probable cause so long as their belief was objectively reasonable.").

Ultimately, Officer Galligan credited the Casino's statements, photographs, and video clip, over plaintiff's statements. He would have been "entitled to believe [plaintiff's] version of events rather than [the Casino's]," but "he was not required to do so." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).

Plaintiff argues Officer Galligan would not have falsely arrested him had he conducted a more thorough investigation May 25, 2013. But even if Officer Galligan's investigation could have been more thorough, that does not undermine his conclusion that he had probable cause to arrest plaintiff. See Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him. Nor does it matter that an investigation might have cast doubt upon the basis for the arrest.") (internal citations omitted).

Plaintiff also takes issue with the video clip made by the Casino and reviewed by Officer Galligan. He argues the full video was available to Officer Mota on May 4, 2013, but that the Casino improperly clipped it to show a period of time before the VGM was broken. In addition, plaintiff argues an unclipped version of the video would show Careri, not plaintiff, damaged the VGM. But the relevant question is whether it was objectively reasonable for Officer Galligan to have arrested plaintiff based on the information available to him at the time of, or immediately

before, the arrest.  Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006).  The only video available to Officer Galligan was the video as clipped by the Casino.  Therefore, what may have been on the unclipped version is irrelevant to his probable cause analysis.

Moreover, viewing the record in the light most favorable to plaintiff, the Court agrees the video clip does not clearly show plaintiff breaking the VGM, and assumes for the purpose of the instant motions that Officer Galligan was mistaken or not being truthful when he said he thought it did.  At most, this suggests the video clip was insufficient, standing alone, to establish probable cause to arrest plaintiff.  However, the Court does not view each piece of evidence individually; rather it considers the "totality of the circumstances."  Stansbury v. Wertman, 721 F.3d 84, 92 (2d Cir. 2013).  Here, the totality of the circumstances – in particular the Casino's presentation of plaintiff as the perpetrator, and the photographs and video clip presented to Officer Galligan – establishes that Officer Galligan had probable cause to arrest plaintiff or, at the very least, "officers of reasonable competence could disagree on whether" he had probable cause.  Garcia v. Does, 779 F.3d at 92.

Based on the above, the Court concludes as a matter of law that Officer Galligan had probable cause, or at a minimum, arguable probable cause, to arrest plaintiff for breaking the VGM.[5]

---

[5]    In support of his motion, plaintiff submitted the expert report of Dr. Robert Gonzalez, Ed.D., and "expert in the field of criminal justice," who opines about Officer Galligan's investigation and whether he had probable cause to arrest plaintiff.  (Bellistri Dec'l Ex. U). The Court gives this no weight because "the issue of whether or not probable cause to arrest exists is a legal determination that is not properly the subject of expert opinion testimony." Cameron v. City of New York, 598 F.3d 50, 62 (2d Cir. 2010) (internal citation omitted); see also Rizzo v. Edison, Inc., 172 F. App'x 391, 395 (2d Cir. 2006) (summary order) ("The judge is both uniquely qualified and uniquely tasked to make the legal determination of what constitutes probable cause; an expert cannot assist in this task, at the summary judgment phase or at trial.").

Accordingly, the claim of false arrest must be dismissed as to Officer Gilligan and, by extension, the other Village defendants. [6]

II.   <u>Malicious Prosecution</u>

The Village defendants argue plaintiff's claim of malicious prosecution should be dismissed because Officer Galligan had probable cause, or at a minimum, arguable probable cause, to charge plaintiff in connection with the damaged VGM.

The Court agrees.

"[A] claim of malicious prosecution brought under § 1983 is governed by state law." <u>Russell v. Smith</u>, 68 F.3d 33, 36 (2d Cir. 1995).  To prove a malicious prosecution claim under New York law, a plaintiff must establish the following elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  <u>Id</u>.

"Because lack of probable cause is an element of a malicious prosecution claim, the existence of probable cause is a complete defense to a claim of malicious prosecution." <u>Stansbury v. Wertman</u>, 721 F.3d 84, 94-95 (2d Cir. 2013) (internal quotation marks omitted).

Moreover, the same standards for qualified immunity apply to malicious prosecution claims.  Accordingly, if there was arguable probable cause to charge plaintiff, Officer Galligan is entitled to qualified immunity.   <u>Lennon v. Miller</u>, 66 F.3d 416, 425 (2d Cir. 1995) ("In assessing whether [defendants] were objectively reasonable in their belief that they had probable cause to

---

[6]     Because plaintiff has failed to show a violation of his constitutional rights by Officer Galligan, any remaining claims asserted against the Village of Monticello under <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 694-95 (1978), must also be dismissed.  <u>Moustakis v. New York City Police Dep't</u>, 181 F.3d 83 (2d Cir. 1999) (dismissing plaintiff's <u>Monell</u> claim "because he failed to demonstrate that any of his constitutional rights were violated").

charge the plaintiff . . . we apply the same standard that we used to evaluate qualified immunity in the false arrest context.").

However, "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996), amended (May 21, 1996) (internal quotations omitted). But "for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." Id.

Here, plaintiff's Section 1983 malicious prosecution claim against the Village defendants overlaps entirely with his allegations of false arrest. In other words, plaintiff has not alleged, and there has been no discovery of, any intervening facts or conduct by the Village defendants between when plaintiff was arrested and when was charged, or for that matter, when the charges against him were dismissed.

Therefore, because Officer Galligan had probable cause, or at least arguable probable cause, to arrest plaintiff, and there are no intervening facts that dissipated that probable cause, there was probable cause, or at least arguable probable cause, to charge him as well.

Accordingly, plaintiff's cause of action for malicious prosecution must be dismissed against the Village defendants.

III.     Supplemental Jurisdiction

Because the Court grants the Village defendants' motion for summary judgment and dismisses all of the federal claims in this case, there are no longer any claims remaining over which it has original jurisdiction.

12

"A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."  Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009); 28 U.S.C. § 1367(c)(3).

The Court declines to exercise supplemental jurisdiction over the remaining state law claims here.

Accordingly, the Court need not address the arguments in the Casino defendants' motion because they are moot.

## CONCLUSION

The Village defendants' motion is GRANTED.  The Court declines to exercise jurisdiction over the remaining state law claims against the Casino defendants.  Therefore, the Casino defendants' motion is moot.

The Clerk is instructed to terminate the motions (Docs. ##61, 65) and close this case.

Dated: August 29, 2016
       White Plains, NY

                              SO ORDERED:


                              _____
                              Vincent L. Briccetti
                              United States District Judge

13